```
                UNITED STATES DISTRICT COURT
             FOR THE DISTRICT OF MASSACHUSETTS

                         CIVIL ACTION NO.  05-CV10161-RBC
```

```
*******************************
SCOTT MCDONALD,
        Plaintiff,

V.

S.G. MARINO CRANE SERVICE
CORPORATION and WASHINGTON
GROUP INTERNATIONAL, INC.,
        Defendants,

V.
DUKE/FLUOR DANIEL,
        Third Party Defendant
*******************************
```

**OPPOSITION OF THE DEFENDANT/THIRD-PARTY PLAINTIFF S.G. MARINO CRANE SERVICE CORPORATION TO THE MOTION TO DISMISS OF THE THIRD-PARTY DEFENDANT DUKE/FLUOR DANIEL**

The Defendant/Third-Party Plaintiff S.G. Marino Crane Service Corporation ("Marino") opposes the Motion to Dismiss of the Third-Party Defendant Duke/Fluor Daniel ("D/FD") to dismiss under Fed.R.Civ.P. 12(b)(1), (3) and (6) for the reasons set forth below.

## Introduction

This is a tort claim for personal injuries arising from an October 21, 2001 construction site accident that occurred at the Sithe Energies Fore River Power Plant in North Weymouth, Massachusetts ("The Project"). On the date of the alleged accident, the plaintiff was employed as a security

guard on The Project. The plaintiff claims he was injured when a sign that was located on the boom of a crane owned by Marino became detached, fell and struck the plaintiff, causing him to sustain personal injuries. Marino leased the crane to D/FD, whom it understood to be the prime contractor and construction manager for The Project.

According to the terms of the crane rental agreement dated August 24, 2001, (a copy of which is attached as Exhibit "A" of D/FD's Motion to Dismiss) D/FD "as agent for Raytheon" was fully responsible for maintenance and repair of the crane during the term of the rental. According to the agreement, D/FD was also required to defend, hold harmless and indemnify Marino from any "claim of injury...arising from or in connection with the use or operation of the equipment or otherwise in connection therewith from the time that the leased equipment leaves it point of origin until it is returned to Lessor [Marino]..."

Marino's Third-Party Complaint against D/FD alleges liability for contractual indemnity and contribution. Count I of the Complaint alleges that D/FD is liable for indemnity under the agreement as the plaintiff's claim arose out of the "use or operation of the equipment or otherwise in connection therewith". Further, Count II alleges that D/FD is liable for contribution as it "negligently operated, used, supervised, repaired or maintained the crane."

D/FD argues in its Motion to Dismiss that it cannot, as a matter of law, be liable on the contractual indemnity claim as it entered into the contract solely in its capacity as agent for a disclosed principal "Raytheon." It further argues that because the agreement contains a forum selection clause setting Connecticut as the appropriate situs for any action brought to enforce the rental agreement, the court lacks jurisdiction in that venue is improper as a matter of law.

D/FD in its motion has not submitted any evidence establishing the nature or its scope of the alleged agency relationship between D/FD and the purported "disclosed principal" Raytheon. Further, to date, there has been no discovery regarding the relationship between D/FD and Raytheon. Nor has there been any discovery as to D/FD's role on the project or its obligations regarding maintenance and inspection of the crane.

**ARGUMENT**

**The Motion to Dismiss must be denied as the Third-Party Complaint contains sufficient allegations to support third party claims for indemnity and contribution against D/FD.**

The standard for a Rule 12(b)(6) motion to dismiss is "an exacting one: 'a[Third Party] complaint should not be dismissed unless it appears beyond doubt that the [Third-

Party] plaintiff can prove no set of facts in support of [its] claim which would entitled [it] to relief.'" McLaughlin v. Boston Harbor Cruise Lines, Inc., 419 F.2d 47, 50(1st Cir. 2005) quoting from Conley v. Gibson, 355 U.S. 41, 46, 78 S.Ct. 99, 2 L.Ed. 80 (1957).  Further, the court must assume that all well-pleaded allegations of the Third-Party Complaint are true and indulge all reasonable inferences from these allegations in Marino's favor.  *Id*.  Additionally, it is inappropriate to resolve "fact-intensive" questions on a Rule 12(b)(6) motion.  *Id*. at 52-53.  Where the parties have not had an opportunity to conduct discovery on material issues, a Rule 12(b)(6) motion can be denied on grounds that it is premature.  See Glassman v. Computervision Corp., 90 F.2d 617, 628 (1st Cir. 1996).

At this early stage, Marino has not had an opportunity to conduct discovery regarding the alleged agency relationship between D/FD and Raytheon.  At this point, Marino knows only that it was directed by the Co-Defendant Washington Group International, Inc. ("WGI"), whom it understood to be a prime contractor on the Project, to address its crane rental agreements to D/FD "as agent for Raytheon."  Other than for purposes of delivering and retrieving its cranes from The Project, Marino did not have any of its employees on site.  It does not know the details

of the alleged agency relationship between D/FD and Raytheon.[1]

Generally, questions as to the creation and extent of a purported agency relationship present questions of fact, which cannot be appropriately resolved on a motion to dismiss. See White's Farm Dairy, Inc. v. De Laval Separator Company, 433 F.2d 63, 68 (1st Cir. 1970)(proof of agency is a question of fact for the jury). The mere fact that the contractual language refers to D/FD "as agent for Raytheon" does not conclusively establish that D/FD cannot be contractually liable under a disclosed principal rationale. Presumably, D/FD had a written contract with Raytheon that set forth the nature and extent of D/FD's contractual obligations on this project. Marino should be allowed to discover this as well as information regarding what D/FD did to carry out its obligations, including the inspection and maintenance of the crane. This information is relevant to the agency relationship and the obligations of D/FD. Marino

---

[1] On information and belief, Marino expects that discovery will confirm the following facts: A subsidiary of Raytheon Company was the original general contractor on The Project. Raytheon guaranteed its subsidiary's performance on the general contract. Raytheon subsequently sold the subsidiary, which became WGI. In early 2001, WGI became insolvent and ceased acting as general contactor on The Project. Raytheon, being the guarantor of the general contract, then retained D/FD to act as construction manager for the project. D/FD was acting as general contractor/construction manager for The Project at the time of the alleged October 21, 2001 accident.

should not be placed in a position, without the benefit of discovery, of asserting claims solely against the alleged principal only to later discover that D/FD had no authority to bind Raytheon to the rental agreement or that D/FD was acting was acting in its capacity as construction manager not merely as agent for Raytheon.  As a result, it is improper to dismiss D/FD as a Third-Party Defendant at this time.

Further, separate and independent from the indemnity claim, Marino has asserted a contribution claim against D/FD.  Even if, as D/FD argues, Connecticut law applies to the contract claim, Massachusetts law would apply to the contribution claim, which has no connection to the contract claim.  In diversity actions, Federal Courts generally apply the Choice of Law Rules of the forum state in determining which state's substantive law should apply.  <u>Dykes v. DePuy, Inc.</u>, 140 F.3d 31, 39 (1st Cir. 1998).  Massachusetts employs "a functional choice of laws approach that responds to the interest of the parties, the states involved and the interstate system as a whole."  <u>Bushkin Assocs. v. Raytheon Co.</u>, 393 Mass. 622, 631, 473 N.E.2d 662, 668 (1985). "The general rule regarding contribution among joint tortfeasors is that the law where the injury occurred governs unless another state has a greater interest."  <u>Schulhof v. Northeast Cellulose, Inc.</u>, 245 F.Supp. 1200, 1208 (D.Mass.

1982).  As the injury occurred in Massachusetts and the plaintiff's underlying tort claim is premised on Massachusetts law, it follows logically that Massachusetts law should apply to the contribution claim.  G.L. c. 231B, §1(a) provides, in pertinent part: "[w]here two or more parties become jointly liable in tort for the same injury to person or property, there shall be a right of contribution among them."  To be liable for contribution, D/FD must be directly liable in tort to the plaintiff.  <u>Liberty Mutual Insurance Company v. Westerlind</u>, 374 Mass. 524, 526, 737 N.E. 2d 957, 959 (1976).

The Third-Party Complaint alleges that D/FD, as construction manager, negligently operated, inspected, repaired and maintained the crane.  The Third-Party Complaint further alleges that, as a result of D/FD's negligence, the plaintiff sustained injuries.  "Under principles of agency law, an agent who commits a tort is not relieved of liability because he acted at the command or on request of the principal."  <u>Orell v. UMass Memorial Medical Center, Inc.</u>, 203 F.Supp.2d 52, 67 (D.Mass. 2002).  Accordingly, the Third-Party Complaint properly states a claim for contribution against D/FD.  D/FD's argument that its conduct in managing The Project would not have caused the sign to fall off is meritless.  This is a factual

question that is not appropriately resolved on a motion to dismiss under Fed.R.Civ.P. 12(b)(6).

**The Motion to Dismiss must be denied as jurisdiction and venue are proper.**

D/FD apparently argues that because the rental agreement states that actions based on the contract should be brought in Connecticut, venue and jurisdiction in Massachusetts are inappropriate. D/FD's claim is unavailing for several reasons.

First, as is outlined above, Marino has asserted a contribution claim against D/FD. This is not a contract claim but rather a tort-based claim premised on G.L.c. 231B inasmuch as the accident occurred in Massachusetts and the plaintiff's claim is presumably based on Massachusetts negligence principles, venue and jurisdiction in Massachusetts on this claim are appropriate.

Additionally, whether Massachusetts or Connecticut law applies to the contractual indemnity claim, both venue and jurisdiction on that claim are also proper. Generally, forum selection clauses are valid and enforceable unless enforcement is shown to be unreasonable under the circumstances. The Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 10, 92 U.S. 1, 10, 32 L.Ed. 513 (1972)(applying federal common law) Jacobson v. Mailboxes Etc. USA, Inc., 419 Mass. 572, 574-75, 646 N.E.2d 741, 743-44 (1995)(Massachusetts

law); <u>Fairfield Lease Corp. v. Romano's Auto Service</u>, 4 Conn.App. 495, 498, 495 A.2d 286, 288-89 (1985)(Connecticut law).

In the present case, Marino drafted the forum clause for its own benefit. Considering D/FD's position that the contract is not enforceable against it, D/FD should not be able to enforce this clause against Marino. Marino is willing to waive the clause so that it can assert third-party claims for indemnity and contribution in the same jurisdiction where the plaintiff has, through no control of Marino, chosen to file this lawsuit. Regardless of the forum selection clause, Massachusetts is clearly the venue that is most convenient to the parties and the most appropriate to pursue the third party claims. It is also in the interest of judicial economy and fairness to litigate both the plaintiff's claim and the third-party claims in the same forum. Accordingly, D/FD's Motion to Dismiss under Fed.R.Civ.P. 12(b)(1) and 12(b)(3) should be denied as well.

## Conclusion

For all of the foregoing reasons, Marino requests that the Court deny D/FD's Motion to Dismiss under Fed.R.Civ.P. 12(b)(1), 12(b)(3), and 12(b)(6).

Respectfully submitted,
S.G. Marino Crane Service
Corporation
By its counsel,

_____
Thomas M. Franco
BBO# 550596
Long & Leahy
100 Summer Street, 11th Fl
Boston, MA 02110
617-439-4777

DATE: 9/11/06

I hereby certify that a true copy of the above document was filed through the ECF system on September 11, 2006, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).